UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Case No. 3:12-CR-112 JD |
| | ) | Related Case No. 3:14-CV-313 JD |
| MICHAEL HODOWANIAC (2) | ) | |

**OPINION AND ORDER**

After Michael Hodowaniac (a/k/a Michael Hodowaniec) was brought into a planned arson of a vehicle by his father John Hodowaniac, Michael Hodowaniac[1] pled guilty of attempting to maliciously damage a vehicle, in violation of 18 U.S.C. § 844(i). On February 15, 2013, Hodowaniac was sentenced to sixty months of imprisonment, which was the statutory mandatory minimum term of imprisonment [DE 69]. On February 10, 2014, Hodowaniac timely filed a petition pursuant to 28 U.S.C. § 2255 [DE 75]. After Attorney David Weisman was appointed on behalf of Hodowaniac [DE 77], Mr. Weisman filed a memorandum in support of Hodowaniac's petition [DE 84]. The government filed its response [DE 88], and the defense filed its reply [DE 89]. For the reasons set forth below, the Court DENIES Michael Hodowaniac's 28 U.S.C. § 2255 petition.

## I. BACKGROUND

### A. The § 2255 Petition

In Hodowaniac's § 2255 petition and defense counsel's supporting briefs, Hodowaniac alleges that his appointed trial counsel, Mr. Brian May, provided ineffective assistance in the following ways: (1) by failing to advise Hodowaniac about the import of waiving his right to file a § 2255 petition [DE 75 at 4; DE 84 at 5]; (2) by failing to tell Hodowaniac that he was not

---

[1] To avoid any confusion, Michael Hodowaniac will be referred to by either his full or last name, while his father will be referred to as John Hodowaniac throughout this order.

eligible for a sentence lower than the mandatory minimum through application of the safety valve provision [DE 75 at 7; DE 84 at 5-6]; (3) by advising Hodowaniac that he might avoid the mandatory minimum through application of Guidelines § 5K2.0 or based on the various § 3553 factors (and by advising Hodowaniac that a sentence closer to 30 months would be recommended to the Court—but wasn't) [DE 75 at 5, 8; DE 84 at 6-9]; and (4) by failing to investigate or explain the possibility of presenting an entrapment defense [DE 84 at 9-10]. As a result of these combined errors, Hodowaniac claims that his guilty plea, including his waiver of the right to file a § 2255 petition, was not knowingly, intelligently, and voluntarily entered. Other than the statements Hodowaniac provided in his "form § 2255 petition," which he signed under the penalties of perjury [DE 75 at 13], Hodowaniac and his appointed counsel Mr. Weisman have offered no additional evidence in support of his petition.

**B.      The Plea Agreement and Change of Plea Hearing**

On November 7, 2012, Hodowaniac entered into a plea agreement wherein he agreed to plead guilty to Count 1 of the Indictment charging him with attempting to maliciously damage a vehicle, in violation of 18 U.S.C. § 844(i). In light of the guilty plea, the government agreed to dismiss Count 2 of the Indictment, charging Michael Hodowaniac and John Hodowaniac with conspiring to maliciously damage a vehicle by means of a fire, in violation of 18 U.S.C. § 844(n).

In his plea agreement, Hodowaniac represented that he had told his attorney, Mr. May, about the facts and circumstances surrounding the charges, that he believed Mr. May was fully informed as to the nature of the charges, and that Mr. May then counseled Hodowaniac about his possible defenses [DE 29 at ¶ 5]. Hodowaniac further represented that he believed Mr. May had "done all that anyone could do to counsel and assist [him]," and Hodowaniac confirmed that he

was offering his plea of guilty "freely and voluntarily and of [his] own accord" and no promises were made to him other than those contained in the plea agreement. *Id*. at ¶¶ 11-12.

With respect to the penalties faced by Hodowaniac, the plea agreement indicated in relevant part that Hodowaniac faced a penalty of "5 to 20 years imprisonment." *Id*. at ¶ 9(b). Hodowaniac also "agree[d] that the Court has jurisdiction and authority to impose any sentence within the statutory maximum set for [his] offense(s) as set forth in this plea agreement." *Id*. at ¶ 9(d). The agreement also contained a waiver provision which stated, in part:

> I expressly waive my right to appeal my conviction, my sentence and any restitution order to any Court on any ground, including any claim of ineffective assistance of counsel. I also agree not to contest my conviction, my sentence, any restitution order imposed, or the manner in which my conviction, the sentence or restitution order was determined or imposed on any ground including any alleged ineffective assistance of counsel in any appeal under Title 18, United States Code, Section 3742 or in any post-conviction proceeding, including but not limited to, a proceeding under Title 28, United States Code, Section 2255.

*Id*. at ¶ 9(d).

At the change of plea hearing before the magistrate judge on November 15, 2012, Hodowaniac was placed under oath and he swore to tell the truth [DE 88-1]. Hodowaniac confirmed that he read, understood, and reviewed the plea agreement with his attorney. *Id*. at 5-6, 13. He also confirmed that there were no promises outside the plea agreement that he was relying on to plead guilty, and that he was satisfied with Mr. May's representation. *Id*. at 6, 14. Mr. May confirmed that the government had been "very generous in [its] discovery" and he and Hodowaniac had "reviewed that material, as well." *Id*. at 10.

Hodowaniac was advised of the nature of the charge and the possible penalties [DE 88-1 at 10-11]. The government stated that Count 1 involved an imprisonment range of "five years up to a maximum of twenty years." *Id*. at 11. The magistrate judge also specifically confirmed that Hodowaniac understood that upon pleading guilty to this offense he "could be sentenced up to

twenty years, but it also carries with it what we call a mandatory minimum of five years. So that would be five to twenty, but twenty is the maximum." *Id*. at 11. Mr. Hodowaniac expressed his understanding of the possible range for imprisonment.

After confirming that Hodowaniac had discussed the sentencing guidelines with Mr. May, the magistrate judge explained that regardless of Mr. May's assessment of the guidelines, "whatever [Mr. May] has said, it's his opinion, and it's not official or final." [DE 88-1 at 12]. The magistrate further stated: "So all I'm saying is whatever you may have discussed or understood with anyone, it's just their opinion, and it's not official until the Court determines your guidelines and that won't occur until sentencing. Okay?" *Id*. To which Hodowaniac answered: "Yes, sir." *Id*.

The magistrate judge twice informed Hodowaniac that the probation department would prepare a presentence investigation report (PSR) and that Hodowaniac and his attorney would have the opportunity to review the PSR and indicate whether any errors or miscalculations, including miscalculations of the guidelines, were contained in the report [DE 88-1 at 12, 20]. The magistrate judge indicated that Hodowaniac could then bring any errors to the court's attention prior to sentencing, because it was "at sentencing . . . when the Court will determine what [his] guidelines are." *Id*. Again, Hodowaniac confirmed that he understood these things.

Thereafter, Hodowaniac was told by the magistrate judge that "whatever the Court determines your guidelines ultimately to be, the Court doesn't have to follow them, because they're guidelines. What that means is that, in the end, the Court could impose a more severe sentence than what the guidelines may be recommending or, for that matter, less severe, but it can't exceed the maximums that we've discussed here." [DE 88-1 at 13]. Hodowaniac indicated that he understood. *Id*.

Finally, the magistrate judge specifically drew Hodowaniac's attention to the waiver provision located in paragraph 9(d) of his plea agreement and explained to Hodowaniac that if he was found guilty after a trial he would have the right to appeal with the assistance of counsel, but by pleading guilty he would not be able to appeal his conviction or sentence to any court on any ground—and Hodowaniac affirmed that he understood what his waiver entailed [DE 88-1 at 8-9, 14]. Despite Hodowaniac's professed understanding, the magistrate judge reiterated the import of the waiver provision by stating:

> So what that could mean to you is if you receive a sentence that is more severe than what you thought you were going to get, perhaps more severe than what Mr. May suggested, or what the guidelines recommend, or even what the United States recommends, you'll not be able to withdraw your guilty plea as a result and nor, as we've just discussed with that other paragraph will you be able to appeal. Do you understand that?

[DE 88-1 at 15]. Again, Hodowaniac responded that he understood. *Id.*

During the change of plea hearing, the government proffered the factual basis for the crime [DE 88-1 at 17-19]. That is, on September 27, 2012, John Hodowaniac began arranging with a then unknown confidential informant (CI) a plan to set fire to a vehicle, for which the CI agreed to pay only $300. Several conversations between John Hodowaniac and the CI were exchanged, and on October 3rd, the CI spoke again with John Hodowaniac to confirm that the arson was to take place later that evening. In response, John Hodowaniac said "We'll be ready," at which point the agents realized that another person was involved, and that person turned out to be John Hodowaniac's son, Michael Hodowaniac. The CI, equipped with recording devices, went to the home where John and Michael Hodowaniac resided. After paying the money, the CI and the Hodowaniac's went to a gas station where Michael Hodowaniac filled a rubbing alcohol bottle with gasoline. After Michael Hodowaniac spilled gas on himself, John Hodowaniac indicated that he would now have to set the car on fire. They then proceeded to the target

vehicle, where Michael and John Hodowaniac were arrested for attempting to commit arson. Upon being interviewed by ATF, Michael Hodowaniac admitted to agents that he and his father had accepted the money to commit the arson. *Id*.

During the course of the plea hearing, Hodowaniac agreed with the government's proffer [DE 88-1 at 19]. Hodowaniac also explained in his own words what he did that made him guilty, and represented to the Court that he had in fact accepted a cash payment to set the vehicle on fire and had gone to commit the arson after obtaining the gasoline [DE 88-1 at 16-17].

The magistrate judge recommended that the undersigned accept the plea of guilty because Hodowaniac had knowingly and intelligently waived his constitutional rights, was informed of the possible penalties, and had freely and voluntarily entered into the plea which was supported by an independent factual basis [DE 88-1 at 19; DE 37]. The undersigned then adopted the plea of guilty, accepted the plea agreement, and found Hodowaniac guilty of Count 1 [DE 43].

**C.       The Sentencing Hearing**

At the sentencing hearing Hodowaniac was placed under oath and swore to tell the truth. He then confirmed that he had received a copy of the final PSR and that he had reviewed and discussed it with Mr. May prior to the sentencing hearing. After the undersigned reiterated that the guideline term of imprisonment was in fact the mandatory minimum sentence, Mr. May confirmed that the defense had no objection to the PSR.

The PSR indicated that the guideline imprisonment range would have been 27-33 months, but the statutorily required minimum sentence of five years was greater than the maximum of the guideline range, and so the guideline term of imprisonment became sixty months, consistent with guideline § 5G1.1(b) [DE 53, PSR, ¶¶ 112-113]. Nothing in the PSR

indicated that a sentence below the mandatory five years was warranted whether under the safety value provision of guideline § 5C1.2 or any other guideline provision in Chapter Five, Part K [DE 53, PSR].  In addition, the PSR contained a description of the offense conduct which coincided with the facts presented at the change of plea hearing [DE 53, PSR ¶¶ 7-31].  Finally, the PSR also described Hodowaniac's family life, history and characteristics, and other relevant factors considered for purposes of sentencing [DE 53, PSR].  Given the lack of objection or supplementation to the final PSR, the Court adopted the entirety of the uncontested PSR at the time of sentencing.

Mr. May represented to the Court that he had already explained to Hodowaniac why it is that the guidelines, while a starting point, really didn't come into play in establishing the advisory guideline range.  Mr. May underscored that he had previously explained to Hodowaniac that while he could be sentenced to more than five years imprisonment, Mr. May was recommending a five year sentence to the Court.  Mr. May also indicated that Hodowaniac was ready, willing, and able to accept such a sentence.  Immediately thereafter, Hodowaniac was afforded his right of allocution, during which Hodowaniac indicated that he had nothing else to say because he concurred with the comments of his attorney.  Ultimately, Hodowaniac was then sentenced to sixty months of imprisonment, in accordance with the mandatory minimum, followed by two years of supervised release [DE 67, DE 69].

Prior to completing the sentencing hearing, the Court referred Hodowaniac to paragraph 9(d) of his plea agreement.  The undersigned asked Hodowaniac whether he understood that pursuant to paragraph 9(d) of his plea agreement, he waived his right to appeal or contest his conviction and sentence, or the manner in which his conviction and sentence were determined or

imposed to any court on any ground, including any claim of ineffective assistance of counsel. Hodowaniac responded by indicating his understanding.

Hodowaniac did not file a direct appeal, but he has now petitioned this Court to vacate his sentence under 28 U.S.C. § 2255.

## II.  STANDARD OF REVIEW

Section 2255(a) of Title 28 provides that a federal prisoner may claim "the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, [and] may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a).  The Seventh Circuit has recognized that § 2255 relief is appropriate only for "an error of law that is jurisdictional, constitutional, or constitutes a fundamental defect which inherently results in a complete miscarriage of justice." *Harris v. United States,* 366 F.3d 593, 594 (7th Cir. 2004) (citation omitted).  Further, "a Section 2255 motion is neither a recapitulation of nor a substitute for a direct appeal." *Olmstead v. United States*, 55 F.3d 316, 319 (7th Cir. 1995) (citation omitted).  Relief under § 2255 is extraordinary because it seeks to reopen the criminal process to a person who has already had an opportunity of full process. *Almonacid v. United States,* 476 F.3d 518, 521 (7th Cir. 2007) (citing *Kafo v. United States,* 467 F.3d 1063, 1068 (7th Cir. 2006)).  Consequently, "[i]f it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion." Rule 4, Rules Governing Section 2255 Proceedings for the United States District Courts.  A court may also deny a § 2255 motion without an evidentiary hearing if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b).

# III. DISCUSSION

Hodowaniac seeks to vacate his conviction under 28 U.S.C. § 2255, which permits a court to vacate a judgment where "there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack." 28 U.S.C. § 2255(b).  Specifically, Hodowaniac argues that he was denied his right to the assistance of counsel, as guaranteed by the Sixth Amendment. The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend. VI.

The two-part *Strickland v. Washington* test applies to challenges to guilty pleas based on ineffective assistance of counsel. *Hill v. Lockhart*, 474 U.S. 52, 57-59 (1985) (citing *Strickland v. Washington*, 466 U.S. 668 (1984)).  In other words, to prevail on an ineffective assistance claim, a petitioner must establish that his "counsel's performance was deficient" and that "the deficient performance prejudiced the defense." *Koons v. United States*, 639 F.3d 348, 351 (7th Cir. 2011) (quoting *Strickland*, 466 U.S. at 687).

To show deficient performance, the defendant must show "that counsel's representation fell below an objective standard of reasonableness." *Koons v. United States*, 639 F.3d 348, 351 (7th Cir. 2011) (quoting *Strickland,* 466 U.S. at 688).  "This means identifying acts or omissions of counsel that could not be the result of professional judgment.  The question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom." *Id.* (citing *Sussman v. Jenkins,* 636 F.3d 329, 349 (7th Cir. 2011)).  The reasonableness of counsel's performance must be evaluated "from counsel's perspective at the time of the alleged error and in light of all the circumstances." *See Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986).

In the context of a guilty plea, a showing of prejudice means that there is a reasonable probability that the defendant would have insisted on going to trial. *Koons*, 639 F.3d at 351; *Bethel v. United States*, 458 F.3d 711, 716 (7th Cir. 2006); *Tezak v. United States*, 256 F.3d 702, 712 (7th Cir. 2001). In other words, the prejudice prong focuses on whether counsel's deficient performance was a decisive factor in the defendant's decision to plead guilty rather than pursuing other options. *See Wyatt v. United States*, 574 F.3d 455, 458 (7th Cir. 2009) (citing *Julian v. Bartley*, 495 F.3d 487, 498 (7th Cir. 2007)). To make that showing, the petitioner must do more than simply allege "that he would have insisted on going to trial"; he must also come forward with objective evidence that he would not have pled guilty. *Hutchings v. United States*, 618 F.3d 693, 697 (7th Cir. 2010) (citing *United States v. Cieslowski*, 410 F.3d 353, 359 (7th Cir. 2005)).

Failure to satisfy either the performance or the prejudice prong of the *Strickland* test is fatal to a defendant's ineffectiveness claim. *Velarde v. United States*, 972 F.2d 826, 828 (7th Cir. 1992); *see Strickland,* 466 U.S. at 687 (reasoning that "[u]nless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable").

## A.      Waiving the Right to File the § 2255 Petition

Hodowaniac asserts that Mr. May did not properly advise him about the import of his appeal waiver [DE 75 at 4; DE 84 at 5]. However, Hodowaniac provides no further explanation to support that contention, except his bare bones allegation that he should be allowed to file the instant motion because he did not understand that he was waiving his right to do so. But the plea agreement and the plea colloquy demonstrate that Hodowaniac understood the implications of his waiver.

In this case, the plea agreement's waiver was clear and unambiguous.  By waiving "any claim of ineffective assistance of counsel" and waiving "any alleged ineffective assistance of counsel" via direct appeal or post-conviction proceedings, Hodowaniac waived every manner of ineffectiveness claims. *See Keller v. United States*, 657 F.3d 675, 681 (7th Cir. 2011) ("A defendant may validly waive both his right to a direct appeal and his right to collateral review under § 2255 as part of his plea agreement.") (citing *Jones v. United States*, 167 F.3d 1142, 1144-45 (7th Cir. 1999)).

Moreover, during the change of plea hearing, Hodowaniac confirmed under oath that he had reviewed and understood the contents of the plea agreement. The magistrate judge specifically pointed out the waiver provision of paragraph 9(d) to the plea agreement, and twice confirmed that Hodowaniac understood that his waiver meant that he could not contest his conviction or sentence on any ground, even if he received a sentence greater than expected. While under oath, Hodowaniac indicated that he understood the implications of his waiver. Based on the discussion at the plea hearing, it is clear that Hodowaniac made a knowing and voluntary decision to waive his right to contest his conviction and sentence in an appeal or a post-conviction proceeding.  *See United States v. Linder*, 530 F.3d 556, 561 (7th Cir. 2008) (indicating that the court will enforce a plea agreement's appellate waiver if its terms are clear and unambiguous and the record shows that the defendant knowingly and voluntarily entered into the agreement).  Even at the sentencing hearing, Hodowaniac again confirmed his understanding of the import of his waiver—representations which were made by Hodowaniac after the Court had imposed the sentence of sixty months of imprisonment.

Hodowaniac provides no explanation for the contradiction between his sworn testimony and his current allegations concerning his misunderstanding of the consequences of the waiver

provision. Thus, based on Hodowaniac's sworn representations, the Court rejects his current inconsistent and unsupported claims that he didn't understand the import of the waiver provision. *See Thompson v. United States*, 732 F.3d 826, 830 (7th Cir. 2013) ("a motion that can succeed only if the defendant committed perjury at the plea proceedings may be rejected out of hand unless the defendant has a compelling explanation for the contradiction." ) (citations omitted). Moreover, Hodowaniac has not alleged any specific assertions or omissions made by Mr. May that might have caused Hodowaniac some confusion with respect to the effects of the waiver prior to his entering into the plea. And without setting forth some specific acts or misrepresentations made by his trial counsel with respect to the waiver provision, Hodowaniac certainly cannot demonstrate deficient performance on the part of Mr. May in this respect. *See United States v. Herrera-Rivera*, 25 F.3d 491 (7th Cir. 1994) (noting that to demonstrate that an attorney's representation fell below the objective standard of reasonableness, for purposes of an ineffective assistance of counsel claim, the defendant must identify specific acts or omissions that fell outside of the wide range of professionally competent assistance). Therefore, Hodowaniac is bound by his waiver. *See United States v. Smith*, 759 F.3d 702, 706-07 (7th Cir. 2014) ("When the defendant pursuant to the plea agreement has knowingly and voluntarily waived his appellate rights, and the terms of that waiver are express and unambiguous, we will enforce those terms.").

Hodowaniac attempts to skirt the waiver by arguing that his plea agreement was the product of ineffective assistance of counsel. *See, e.g., Hurlow v. United States*, 726 F.3d 958, 964–66 (7th Cir. 2013). But as discussed below, it cannot be said that the arguments raised by Hodowaniac serve as a basis for finding that he did not knowingly, intelligently, and voluntarily enter into his plea agreement, including its waiver provision. First, with respect to the allegation

that Mr. May misrepresented (or failed to clarify in some respect) the possibility of Hodowaniac's receiving a sentence of less than sixty months, the record conclusively establishes that in pleading guilty Hodowaniac was not relying on a particular sentence—let alone Mr. May's alleged predictions. Second, relative to Mr. May's alleged failure to consider the entrapment defense prior to Hodowaniac's pleading guilty, no such defense had any merit. The Court now turns to these allegations.

**B.      Sentence of Imprisonment For Something Less Than Five Years**

In Hodowaniac's form § 2255 petition, he attests that he was induced to plead guilty based on the misrepresentations by Mr. May that he could be eligible for a sentence lower than the mandatory minimum through application of guidelines §§ 5C1.2 or 5K2.0, or via a variance based on the § 3553(a) sentencing factors [DE 75 at 5, 7-8]. Hodowaniac also asserts that Mr. May indicated that if Hodowaniac pled guilty, then Mr. May would argue for a sentence closer to 30 months of imprisonment. *Id*. However, at sentencing, Mr. May recommended a sentence of sixty months imprisonment, consistent with the statutory mandatory minimum. *Id*.

The Court would first note that Hodowaniac's assertions indicate that Mr. May apparently told Hodowaniac that he "could" receive a sentence of lower than sixty months imprisonment if he pled guilty [DE 75 at 5, 7-8]. But these contentions certainly do not establish that Mr. May promised Hodowaniac a particular sentence in exchange for his guilty plea. Defense counsel's supplemental briefing also indicates that Mr. May indicated that Hodowaniac "might" avoid the minimum mandatory sentence through either application of the guidelines or the sentencing factors [DE 84 at 2, 5-9] (the plea was the result of "misstatements by May about the *probable or possible* sentence that *might* be imposed upon Michael"; "safety-value treatment *might* provide some possibility of avoiding the minimum mandatory sentence"; "May

misrepresented to him that he *might* avoid the mandatory minimum . . . because of departures specified under Section 5K2.0"; "a departure below the minimum mandatory sentence '*certainly would be granted*' based upon [the § 3553(a) factors]"; "May told Michael that he *should* receive a sentence at or near the lower end of the Guideline range of 27 to 33 months.") (emphasis added). So again, nothing in the § 2255 submissions indicate Mr. May guaranteed Hodowaniac a sentence under sixty months.

But even assuming that Mr. May provided objectively unreasonable advice (prior to Hodowaniac's entering the plea deal),[2] fatal to Hodowaniac's claim is the fact that he has not shown that absent counsel's deficient performance, he likely would not have pled guilty but would have insisted on going to trial. First, nowhere in Hodowaniac's form § 2255 petition or in counsel's supplemental briefing does the defense indicate that but for these alleged misrepresentations Hodowaniac would not have pled guilty or he would have insisted on going to trial. In fact, Hodowaniac only asked at the outset to be "resentenced" [DE 75 at 13]—the result of course would be the imposition of the same sixty month sentence given the continuing non-application of any means by which to depart from the mandatory minimum. As an aside, the Court would also note that Hodowaniac does not claim that he is actually innocent of the crime to which he pleaded guilty, or that he wants to go to trial. This is not so surprising given the strength of the government's case in that the events involving the CI were recorded and Hodowaniac immediately professed his guilt to agents after his apprehension. Needless to say there is no representation made in the § 2255 documents that Hodowaniac would not have pled guilty but for Mr. May's erroneous advice.

---

[2] Such advice, if given, would obviously have been in error given the non-applicability of any means in this case by which to sentence below the five years of imprisonment required by 18 U.S.C. § 844(i).

Yet even had Hodowaniac indicated that absent Mr. May's errors in projecting his likely sentence he would have insisted on going to trial, Hodowaniac is unable to explain away the representations in his plea agreement and plea hearing which reveal Hodowaniac's affirmation that his guilty plea was not in reliance of a particular sentence (and thus, despite his contention to the contrary, was knowingly, intelligently, and voluntarily entered into in this respect).

With respect to the sentencing consequences, the plea agreement itself clearly states that Hodowaniac could be sentenced to a term of imprisonment ranging from five years up to twenty years, and that the Court had jurisdiction and authority "to impose any sentence within the statutory maximum." During Hodowaniac's change of plea hearing, both counsel for the government and the magistrate judge pointed out that while there was a mandatory sentence of five years imprisonment, Hodowaniac could be sentenced to prison from five years and up to twenty years. Hodowaniac explicitly acknowledged that he understood how that specific penalty range would be the consequence of his guilty plea.

Thereafter, no less than four more times did the magistrate judge tell Hodowaniac that regardless of the sentence Mr. May advised him might be given or regardless of the sentence Hodowaniac thought he might get, the Court could ultimately impose a more severe sentence. It was also made clear during the change of plea hearing that the Court would not be able to determine Hodowaniac's actual guideline sentence until after the PSR had been completed, upon which he and his attorney could challenge the contents of the PSR.[3] While under oath during the

---

[3] Ultimately, Hodowaniac did not object to the PSR (nor does he claim that Mr. May should have objected to the PSR) nor move to withdraw his guilty plea despite the fact that the PSR and the undersigned put the defense on notice that sixty months was the guideline term for imprisonment, given the statutory mandatory minimum. Before the sentence was pronounced, Mr. May represented to the Court that he had previously discussed with Hodowaniac how there was no basis for relief from a sentence of sixty months or more—comments which were consistent with Mr. May's sentencing memorandum and were then explicitly adopted by Hodowaniac during his allocution.

change of plea hearing, Hodowaniac repeatedly acknowledged his understanding and never hesitated with respect to wanting to plead guilty. Hodowaniac has provided no explanation for overriding his statements made when entering the guilty plea.

The plea colloquy in this case was similar to the plea taken in *Bethel v. United States*, 458 F.3d 711 (7th Cir. 2006). Although no one mentioned that the career offender provision might enhance Bethel's sentence before he pled guilty, the Seventh Circuit considered the advisement made to the defendant during the change of plea hearing:

> the district court advised Bethel that his sentence could be more severe than he might be expecting; that the government reserved the right to challenge the Guidelines computations prepared by the probation office; that any Guideline computation discussions were not part of the plea agreement; and that Bethel should not rely upon the possibility of a particular sentence based on Guideline computation discussions held between defense counsel and the government. The court advised Bethel that "the Court will not be able to determine the guideline sentence for your case until after the presentence report has been completed and . . . you have had the opportunity as will the government to challenge the reported facts and the application of the guidelines recommended by the probation officer and that the sentence imposed may be different from any estimate your attorney may have given you." R. 109, at 22.

458 F.3d at 718. The Seventh Circuit reasoned that because the court had advised the defendant that he could not rely on any particular prediction or discussion about a possible sentence when he entered his plea, to which Bethel indicated under oath that he understood, Bethel could not now be heard to complain that he would not have pled guilty had he known that his sentence would be more severe than his lawyer predicted. *Id.*

While *Bethel* admittedly involved a defense attorney's failure to advise the defendant of a sentencing enhancement, in *Hutchings v. United States*, 618 F.3d 693 (7th Cir. 2010), the Seventh Circuit considered the defendant's post-conviction claim that his attorney promised him that a Rule 35 motion would later reduce his sentence. The Seventh Circuit, after noting that Hutchings likely faced the same lifetime sentence even if acquitted at trial, focused on the

"importanc[ce]" of the statements made by Hutchings during his plea colloquy where he specifically affirmed that there had not been any promises made to him to induce him to plead guilty. 618 F.3d at 699.  Ultimately, it was determined that Hutchings was unable to justify his lie to the district court by arguing that the Rule 35 deal was a secret, and absent a showing that his attorney personally directed him to hide the truth from the judge, his explanation for lying to the court could not be accepted. *Id*.  So even assuming counsel's performance was constitutionally deficient, Hutchings was unable to establish prejudice. *Id*.

Here, Hodowaniac's claim is not that Mr. May improperly advised him as to his sentencing exposure; rather, he argues that Mr. May erroneously represented to him that he "might" or "could" receive a sentence less than the sentencing range of five to twenty years. But, like the defendant in *Bethel*, the defendant here made "broad and repeated concessions that he understood his sentence could be more severe than predicted and that he was not relying on a particular sentence in signing the plea agreement and pleading guilty." *Bethel*, 458 F.3d at 719. Thus, Hodowaniac cannot now complain that his plea was based on representations by Mr. May that he might be eligible to receive a sentence under the mandatory minimum term.  Rather, Hodowaniac, like Bethel, specifically disclaimed that risk at his change of plea hearing. *Id*.  And, not only did Hodowaniac confirm his understanding that he could be misinformed as to the potential sentence he faced, but he acknowledged (in both his plea agreement and at the change of plea hearing) that in pleading guilty, he was not relying on any promises made to him other than those contained in the plea agreement. *See id.*; *see also Hutchings*, 618 F.3d at 699. As reasoned in *Hutchings*, "[j]ustice would be ill-served, and the utility of the Rule 11 colloquy would be undermined, by allowing [defendant] to renege on his representations under oath to the district court that there were no promises made to him to induce his guilty plea." *Id*.; *see also,*

*Wyatt v. United States*, 574 F.3d 455, 458-59 (7th Cir. 2009) (despite the defendant's claim that he pled guilty based on counsel's assurance that he would not be subject to a career offender sentence, defendant was bound by his plea admissions indicating that such advice was not a decisive factor in his decision to enter the plea and that no other promises had been made to him).

So to repeat, even had Hodowaniac asserted that he would not have pled guilty had he known his sentence would be higher than predicted by Mr. May, this claim would be contradicted by his sworn statements at the change of plea hearing. Hodowaniac repeatedly affirmed under oath that he wished to plead guilty knowing he could not rely on his attorney's prediction about the sentence and understanding that the sentencing consequences meant he could be sentenced up to twenty years in prison. He also confirmed that in pleading guilty, he was not relying on any promises outside of the plea agreement. Hodowaniac offers no excuse, much less a viable one, for changing his story now. Because Hodowaniac cannot show that his sentence was a factor, much less a decisive factor, in his decision to plead guilty, Hodowaniac has failed to show prejudice. And he has most certainly failed to show that his plea agreement and its waiver are invalid because in pleading guilty he relied on his attorney's representations with respect to his sentence. Ultimately, no hearing shall be held on this ground because the record conclusively shows that Hodowaniac is entitled to no relief.

## C.     The Entrapment Defense

While not appearing as a claim in Hodowaniac's form § 2255 petition, Mr. Weisman's supplemental brief argues that Mr. May was ineffective in failing to investigate and explain the

possibility of presenting an entrapment defense to Hodowaniac.[4]  In all of the § 2255 materials submitted by the defense, this is the only occasion where it is indicated that Hodowaniac's decision to plead guilty "might" have been different had he been provided this entrapment-related information.  But defense counsel also represents that further consultation with Hodowaniac and review of discovery "might indicate on the other hand that seeking trial is not warranted and that re-entry of the plea of guilty is proper." [DE 84 at 10].

First, these representations offered by defense counsel are insufficient to establish that there is a reasonable probability that Hodowaniac would have insisted on going to trial had the entrapment defense been further explored and considered by Mr. May and his client. *Bethel v. United States,* 458 F.3d 711, 718 (7th Cir. 2006) (even a mere allegation by the defendant that he would have insisted on going to trial is not sufficient to establish prejudice).  Thus, Hodowaniac's failure to focus on the guilty plea is fatal to his claim.

But, his argument respecting the entrapment defense independently fails as well.  When the alleged error of counsel is the failure to investigate potentially exculpatory evidence, the determination of prejudice will depend on the likelihood that the discovery of the evidence would have led counsel to change his recommendation as to the plea—an assessment which depends in large part on a prediction of whether the evidence likely would have changed the outcome of a trial. *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).  Similarly, where the alleged error is the failure to advise the defendant of a potential defense to the crime charged, the resolution of the question of prejudice to the defendant depends largely on whether the defense likely would have succeeded at trial. *Id.*

---

[4] Supplemental briefs submitted before the district court rules on the original § 2255 petition can be considered amendments to the original motion. *Lanier v. United States*, 220 F.3d 833, 838 (7th Cir. 2000) (citing *Johnson v. United States*, 196 F.3d 802, 805 (7th Cir. 1999)).

Hodowaniac and Mr. Weisman have not specified any facts that an investigation into the entrapment defense might have produced which would show that Hodowaniac may have been permitted to present an entrapment defense to the jury if he had proceeded to trial. The defense also provides no explanation for why it may need to review discovery, given that Hodowaniac himself would have any information needed to assert an entrapment defense—as Hodowaniac personally knows what contacts he had (or didn't have) with the government CI prior to the crime's inception and attempted commission.   With that said, in order to present a jury question on an entrapment defense, there must be evidence of both government inducement and a lack of predisposition to commit the crime. *United States v. Haddad*, 462 F.3d 783, 790 (7th Cir. 2006). The Seventh Circuit has clarified the inducement prong of an entrapment defense:

> We hold that inducement means more than mere government solicitation of the crime; the fact that government agents initiated contact with the defendant, suggested the crime, or furnished the ordinary opportunity to commit it is insufficient to show inducement. Instead, inducement means government solicitation of the crime plus some other government conduct that creates a risk that a person who would not commit the crime if left to his own devices will do so in response to the government's efforts. The "other conduct" may be repeated attempts at persuasion, fraudulent representations, threats, coercive tactics, harassment, promises of reward beyond that inherent in the customary execution of the crime, pleas based on need, sympathy, or friendship, or any other conduct by government agents that creates a risk that a person who otherwise would not commit the crime if left alone will do so in response to the government's efforts.

*United States v. Mayfield*, 771 F.3d 417, 434-35 (7th Cir. 2014).

Again, Hodowaniac offers zero evidence—let alone a factually based proffer—supporting the applicability of the entrapment defense in Hodowaniac's case.  Rather, all he does is generally assert that Mr. May should have further investigated the possible defense given the nature of the crime and then discussed the entrapment defense with Hodowaniac.  Hodowaniac's silence on how he could prove entrapment is enough to foreclose his claim, but his allegation is

also belied by the uncontested record facts indisputably showing that no entrapment defense was viable.

Specifically, Hodowaniac admitted at his change of plea hearing that it was his father who arranged with the CI a plan to set fire to a vehicle, and it wasn't until the day of the crime that agents realized another individual, that being Michael Hodowaniac, had become involved. These same facts were reiterated in Hodowaniac's PSR, to which Hodowaniac did not, and still does not, contest [*See* DE 53, PSR, ¶¶ 7-31, 129 (as a mitigating factor, it was noted that "his father was the one who negotiated the [arson] deal in this case and it appears he brought his son into the attempted arson."). Even defense counsel's supplemental memorandum in support of the § 2255 petition acknowledges that it was John Hodowaniac who got Michael Hodowaniac involved in the crime [DE 84 at 8 ("and also getting Michael involved in this crime.")]. Ultimately, it is undisputed that Michael Hodowaniac did not have contact with the CI with respect to committing the crime until sometime *after* John Hodowaniac had already managed to secure Michael Hodowaniac's participation in the crime. Thus, any inducement of Michael Hodowaniac came from John Hodowaniac. And there is no suggestion that John Hodowaniac worked as a government informant. For this reason, Michael Hodowaniac cannot claim entrapment when his father initiated his participation in the crime.

And, even if the government solicited the crime (which again, it did via John Hodowaniac), there are no claims of "other government conduct," such as repeated attempts to convince Michael Hodowaniac to engage in illegal conduct, fraud, threats, coercion, harassment, promises of great reward or appeals to need, sympathy, or friendship, thereby creating a risk that Michael Hodowaniac, who would not commit the crime if left to his own devices, would do so in response to the government's efforts. *See United States v. Blitch*, 773 F.3d 837 (7th Cir. 2014)

(citing *Mayfield*, 771 F.3d at 434).  The government's conduct cannot be considered inducement so as to permit Hodowaniac to assert an entrapment defense.  Therefore, even assuming that Mr. May did not investigate or discuss a possible entrapment defense with Hodowaniac before he decided to plead guilty, Hodowaniac cannot show that he was prejudiced by the failure. Moreover, he cannot show that his plea agreement and his waiving the right to file this petition were not knowingly, intelligently, and voluntarily agreed to because he failed to consider the non-viable entrapment defense.  No hearing is necessary on this issue.

## IV.  CERTIFICATE OF APPEALABILITY

Pursuant to Rule 11 of the Rules Governing Section 2255 Proceedings for the United States District Courts, the Court must "issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and the Rule permits the Court to hear further argument on whether a certificate of appealability should issue.  A certificate of appealability may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c); Rule 11, Rules Governing Section 2255 Proceedings for the United States District Courts.  The substantial showing standard is met when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel,* 529 U.S. 473, 484 (2000) (quotation marks omitted) (quoting *Barefoot v. Estelle,* 463 U.S. 880, 893 & n.4 (1983)); *see Young v. United States*, 523 F.3d 717 (7th Cir. 2008).  A defendant is not required to show that he will ultimately succeed on appeal. *Miller-El v. Cockrell,* 537 U.S. 322, 342 (2003) (stating that the question is the "debatability of the underlying constitutional claim, not the resolution of that debate").

Additional argument is not necessary here because nothing before the Court suggests that jurists of reason could debate the correctness of the Court's rulings herein, nor could there be a

debate about whether the issues presented deserve further proceedings. As a result, the Court declines to issue Hodowaniac a certificate of appealability.

The Court advises Hodowaniac that pursuant to Rule 22(b) of the Federal Rules of Appellate Procedure, when the district judge denies a certificate of appealability, the applicant may request a circuit judge to issue the certificate. The Court further advises Hodowaniac that Rule 4(a) of the Federal Rules of Appellate Procedure governs the time to appeal an order entered under the rules governing § 2255 proceedings. *See* Rule 11(b), Rules Governing Section 2255 Proceedings for the United States District Courts. Under Rule 4(a), when the United States is a party in a civil case, any notice of appeal may be filed by any party within sixty days after the judgment or order appealed from is entered. Fed. R. App. P. 4(a); *Guyton v. United States*, 453 F.3d 425, 427 (7th Cir. 2006) (stating that "the time to contest the erroneous denial of [the defendant's] first § 2255 motion was within 60 days of the decision").

## V. CONCLUSION

For the reasons set forth above, the Court DENIES Michael Hodowaniac's § 2255 petition and DENIES the issuance of a certificate of appealability.

SO ORDERED.

ENTERED:  February 17, 2015 


           /s/ JON E. DEGUILIO         
           Judge
           United States District Court